IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

02C 0382
MAGISTRATE JUDGE
DOCKETED
JAN 17 2002

| | |
|---|---|
| **IMPERIAL HOLDINGS GROUP, LLC,** a Nevada limited liability company, | ) |
| Plaintiff, | ) |
| v. | ) |
| **PETER R. HARVEY,** | ) |
| Defendant. | ) |

**COMPLAINT**

Imperial Holdings Group, LLC, through its attorney, Martin B. Carroll of Fox, Hefter, Swibel, Levin & Carroll, for its complaint against Peter R. Harvey, states as follows:

**Parties**

1. Plaintiff, Imperial Holdings Group, LLC ("Imperial"), is a Nevada limited liability company.

2. Defendant, Peter R. Harvey ("Harvey"), is an Illinois citizen and resident.

**Jurisdiction and Venue**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1), by virtue of the fact that there is complete diversity of citizenship between Imperial and Harvey and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district under 28 U.S.C. § 1391(a)(1) and (2) in that the defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**COUNT I**
**(Breach of Contract)**

5. On March 28, 2001, Imperial and Harvey entered into a loan agreement ("Loan"), whereby, *inter alia*, Harvey borrowed $2,300,000 from Imperial. (A copy of the Loan is attached as Exhibit A.)

6. Pursuant to the terms of the Loan, Harvey agreed to repay the full amount of the Loan on or before April 5, 2001.

7. Imperial complied with all of its obligations arising from the Loan.

8. Harvey breached the terms of the Loan by failing to repay the loan by April 5, 2001 and has failed to make any payments to Imperial since that date.

9. Pursuant to the Loan, Imperial is entitled to interest at a rate of 24% per annum on the outstanding principal amount through the maturity date of April 5, 2001. The total interest due and owing to Imperial from Harvey through the maturity date totals $13,799.97.

10. Pursuant to paragraph 1 of the Loan, Imperial is entitled to default interest at a rate of 33% per annum on the principal amount outstanding on the Loan. The amount of default interest due and owing to Imperial from Harvey through January 31, 2002 totals $662,200.

11. Pursuant to paragraph 6 of the Loan, Harvey agreed to pay Imperial a finance fee of $90,000 on March 28, 2001.

12. Harvey breached the terms of the Loan by failing to pay the $90,000 finance fee to Imperial and owes said funds to Imperial.

13. Paragraph 6 of the Loan also required Harvey to pay Imperial the sum of $5,000 at closing to cover Imperial's costs incurred in documenting the Loan, including its attorneys' fees.

14. Harvey breached the terms of the Loan by failing to pay the $5,000 fee to Imperial and owes said funds to Imperial.

15. On March 28, 2001, Harvey also executed a Letter Agreement in which he acknowledged that he also owed $150,000 in fees to Imperial in consideration for the Loan. (A copy of the Letter Agreement is attached as Exhibit B.)

16. Harvey has breached the terms of the Letter Agreement by failing to pay the $150,000 fee to Imperial and owes said funds to Imperial.

17. Pursuant to paragraph 6 and 8(L) of the Loan, Harvey agreed to pay all costs incurred by Imperial in enforcing the Loan terms, including its reasonable attorneys' fees. Harvey is therefore liable for Imperial's reasonable attorneys' fees incurred in this action.

WHEREFORE, the plaintiff, Imperial Group Holdings, LLC, respectfully prays that judgment be entered in its favor and against Peter R. Harvey as follows:

a) $2,300,000 which represents the principal owed by Harvey to Imperial under the Loan;

b) $13,799.67 in interest on the Loan;

c) $662,200 in default interest on the Loan, plus default interest through date of trial;

d) $155,000 in finance fees and costs incurred by Imperial;

e) its reasonable attorneys' fees incurred in this action; and

f) any additional relief as this Court deems just in this matter.

**IMPERIAL GROUP HOLDINGS, LLC**

By:____________________
One of Its Attorneys

ms\imperial\complaint

Martin B. Carroll
Richard L. Sandler
**FOX, HEFTER, SWIBEL, LEVIN & CARROLL**
325 North LaSalle Street, Suite 625
Chicago, Illinois 60610
(312) 224-1200

EXHIBIT A

# LOAN AGREEMENT

Up to $2,300,000.00

Chicago, Illinois
Date: March 28, 2001

FOR VALUE RECEIVED, the undersigned PETER R. HARVEY, an individual, ("*Borrower*"), hereby promises to pay to IMPERIAL HOLDINGS GROUP, LLC, a Nevada limited liability company ("*Holder*"), at such place as Holder may specify, in lawful money of the United States of America, the principal sum of $2,300,000.00 (the "*Loan*"), on or before April 5, 2001 (the "*Maturity Date*"), plus interest on the principal amount outstanding from time to time hereunder at a rate equal to the lesser of (i) the maximum lawful rate or (ii) twenty-four percent (24%) per annum. Interest shall be calculated in arrears through the last day of each month, and shall be due and payable on the date that the loan is funded as more fully set forth below in Section 1. Interest shall be computed on the basis of a 360 day year, and the minimum interest payable shall be computed as if the loan were outstanding for 30 days, regardless of the Maturity Date.

1. ADVANCES; PAYMENTS. On or before the date of this Loan Agreement (the "*Agreement*"), and subject to the accuracy of Borrower's representations, Holder will deliver to Borrower in immediately available funds the principal amounts specified above (net of any costs and expenses to be paid by Borrower to Holder or its counsel).

All payments under this Agreement shall be applied first to fees and expenses, then to interest and then to principal. Any principal or interest payments on this Agreement outstanding after the occurrence and during the continuance of a default under this Agreement shall bear interest at a rate equal to the lesser of (i) the lawful legal rate or (ii) nine percent (9%) above the interest rate otherwise applicable under this Agreement.

2. Secured Agreement. To secure repayment of all obligations evidenced by this Agreement and performance of all of Borrower's obligations hereunder, Borrower grants Holder, a security interest in all interests of Borrower and the family and affiliates of Borrower 629,000 shares of the common stock of Entrade, Inc. (NYSE: ETA) held in the account of Borrower at Freeman Securities (the "*Collateral*"). Borrower shall take such actions as Holder requests from time to time to perfect or continue the security interest granted hereunder including, without limitation, filing UCC-1 financing statements in connection therewith. Borrower shall not dispose of or encumber all or any substantial part of the Collateral without prior written consent of Holder.

3. REPRESENTATIONS, WARRANTIES AND COVENANTS OF BORROWER.

(a) Borrower has all requisite power to transact the business it transacts and proposes to transact, to execute and deliver this Agreement, and all other documents and agreements contemplated by this Agreement, and to perform the provisions of this Agreement and to consummate the transactions contemplated by this Agreement. This Agreement, and all other documents and agreements contemplated by this Agreement have each been duly executed and delivered by, and each is the valid and binding obligation of, Borrower enforceable against Borrower in accordance with its terms, except as may be limited by applicable bankruptcy, reorganization, insolvency, moratorium or other similar laws or by legal or equitable principles relating to or limiting creditors' rights generally.

(b) *No Conflicts*. The consummation of the transactions contemplated by this Agreement and the performance of the terms and provisions of this Agreement, and any other documents or agreements contemplated by this Agreement will not (i) contravene, result in any breach of, or constitute a default under any indenture, mortgage, deed of trust, bank loan or credit agreement, corporate



EXHIBIT A

charter, by-laws or other material agreement or instrument to which Borrower is a party or by which Borrower or any of its properties or the Collateral is bound, (ii) conflict with or result in a breach of any of the terms, conditions or provisions of any order of any court, arbitrator or Federal, State, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign (collectively, "*Governmental Person*") applicable to Borrower or (iii) violate any material provision of any statute or other rule or regulation of any Governmental Person applicable to Borrower, which could have a material adverse effect on Borrower.

(c) [INTENTIONALLY DELETED]

(d) [INTENTIONALLY DELETED]

(e) *Financial Condition, Statements and Reports*. All financial statements now or in the future delivered to Holder have been, and will be, prepared in conformity with generally accepted accounting principles and now and in the future will completely and fairly reflect the financial condition of Borrower, at the times and for the periods therein stated. Between the last date covered by any such statement provided to Holder and the date hereof, there has been no material adverse change in the financial condition or business of Borrower. Borrower is now and will continue to be solvent.

(f) *Compliance with Law*. Borrower has complied, and will comply, in all material respects, with all provisions of all applicable laws and regulations, including, but not limited to, those relating to Borrower's ownership of real or personal property, the conduct and licensing of Borrower's business, and all environmental matters.

(g) *Litigation*. There is no claim, suit, litigation, proceeding or investigation pending or (to the best of Borrower's knowledge) threatened by or against or affecting Borrower in any court or before any governmental agency (or any basis therefore known to Borrower) which could normally or reasonably be expected to result, either separately or in the aggregate, in any material adverse change in the financial condition or business of Borrower, or in any material impairment in the ability of Borrower to carry on its business in substantially the same manner as it is now being conducted. Borrower will promptly inform Holder in writing of any claim, proceeding, litigation or investigation in the future threatened or instituted by or against Borrower.

(h) *Use of Proceeds*. All proceeds of the loan shall be used solely for lawful business purposes.

(i) *Indebtedness* Except for the loan evidenced by this Agreement and as set forth in Schedule 3, Borrower has no outstanding indebtedness of any kind (including contingent obligations, tax assessments and unusual forward or long-term commitments).

(j) *Disclosure*. No representation or other statement made by Borrower to Holder contains any untrue statement of a material fact or omits to state a material fact necessary to make any statements made to Holder not misleading.

(k) *Performance*. Borrower shall pay the principal of and interest on the loan evidenced by this Agreement in the manner provided in this Agreement. The obligation of Borrower described in the preceding sentence is absolute and unconditional, irrespective of any tax or accounting treatment of such obligation including without limitation any documentary stamp, transfer, ad valorem or other taxes assessed by any jurisdiction in connection with this transaction.

(l) *Stay, Extension and Usury Laws*. Borrower agrees (to the extent it may lawfully do so) that it will not at any time insist upon, plead or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law or any usury law or other law that would prohibit or forgive Borrower from paying all or a portion of the principal of, finance fee, or interest on the loan contemplated by this Agreement, wherever enacted, now or at any time hereinafter in force, or that may materially affect the covenants or the performance of this Agreement in any manner inconsistent with the provisions of this Agreement. Borrower expressly waives all benefit or advantage of any such law. If a court of competent jurisdiction prescribes that Borrower may not waive its rights to take the benefit or advantage of any stay or extension law or any usury law or other law in accordance with the prior sentence, then the obligation to pay interest on the principal shall be reduced to the maximum legal limit under applicable law governing the interest payable in connection with this Agreement, and any amount of interest paid by Borrower that is deemed illegal shall be deemed to have been a prepayment of principal on the loan.

(m) *Taxes*. Borrower shall make all necessary tax filings and reports and pay prior to delinquency all taxes, assessments and governmental levies that may be imposed upon Borrower, except as contested in good faith and by appropriate proceedings.

(n) *Limitations on Indebtedness*. Without Holder's prior written consent, Borrower shall not, directly or indirectly, create, incur, assume, suffer to exist or otherwise in any manner become liable or commit to become liable for any indebtedness other than Borrower's obligations to Holder under this Agreement and indebtedness incurred in the ordinary course of business not in excess of US$50,000 in the aggregate.

(o) *Insurance*. Borrower shall maintain insurance with responsible and reputable insurance companies or associations in such amounts and covering such risks as is usually carried by companies engaged in similar businesses and owning similar properties in the same general areas in which Borrower operates.

(p) *Reports*. Borrower will provide Holder with monthly Borrower-prepared financial statements within 15 days after the end of each month and such additional financial and other information as Holder may reasonably request from time to time.

(q) [INTENTIONALLY DELETED]

(r) *Consolidation*. Borrower will not merge or consolidate with any person or entity, or make any investments, or dispose of any substantial portion of its assets without Holder's prior written consent.

4. PREPAYMENTS.

(a) *Optional*. Borrower may, from time to time, prepay the loan evidenced hereby, in whole or in part, so long as each partial prepayment of principal is equal to or greater than $50,000 and Borrower has given Holder two (2) or more business days' written notice of such optional prepayment. Any such optional prepayment of principal shall be without premium or penalty. Each prepayment of principal under this Section shall be accompanied by all interest then accrued and unpaid on the principal so prepaid. Any principal prepaid pursuant to this Section shall be in addition to, and not in lieu of, all payments otherwise required to be paid under this Agreement at the time of such prepayment.

(b) *Mandatory*. Unless otherwise agreed to by Holder, Borrower shall prepay the loan to the extent of the net financing proceeds actually received by Borrower in the event that Borrower

completes any financing transaction whatsoever from and after the date of this Agreement, including without limitation any public or private placements of debt or equity

5. [INTENTIONALLY DELETED]

6. FEES AND EXPENSES. Borrower shall pay Holder, or its assigns, a finance fee of Ninety Thousand Dollars ($90,000) on the date of this Agreement to cover administrative and fund costs. In addition, Borrower will pay Holder Five Thousand Dollars ($5,000) at Closing to cover all documentation and legal costs and expenses, including reasonable attorney's fees of Holder's counsel, incurred in the preparation of this Agreement and the other documents executed in connection with this Agreement. Company shall pay all reasonable and actual costs that Holder incurs in enforcing this Agreement or exercising any rights with respect to the collateral, including without limitation reasonable attorneys' fees and expenses. Borrower shall pay all reasonable and actual costs that Holder incurs in enforcing this Agreement or exercising any rights with respect to the collateral, including without limitation reasonable attorneys' fees and expenses.

7. EVENTS OF DEFAULT; REMEDIES.

(a) *Events of Default Defined; Acceleration of Maturity.* If any of the following events ("*Events of Default*") shall occur and be continuing (for any reason whatsoever and whether it shall be voluntary or involuntary or by operation of law or otherwise):

(i) default shall be made in the payment of the principal of, or interest on, the loan when and as the same shall become due and payable, whether at stated maturity, by acceleration, upon a mandatory prepayment due date or otherwise; or

(ii) default shall be made in the performance or observance of any covenant, agreement or condition contained in this Agreement, and such default shall have continued for a period of five (5) business days; or

(iii) Borrower shall (1) apply for or consent to the appointment of, or the taking of possession by, a receiver, custodian, trustee or liquidator of itself or of all or a substantial part of its property and assets, (2) be generally unable to pay its debts as such debts become due, (3) make a general assignment for the benefit of its creditors, (4) commence a voluntary case under the United States Bankruptcy Code or similar law or regulation (as now or hereafter in effect), (5) file a petition seeking to take advantage of any other law providing for the relief of debtors, (6) fail to controvert in a timely or appropriate manner, or acquiesce in writing to, any petition filed against it in an involuntary case under the United States Bankruptcy Code or other law or regulation, (7) dissolve, (8) take any corporate action under any applicable law analogous to any of the foregoing, or (9) take any corporate action for the purpose of effecting any of the foregoing; or

(iv) a proceeding or case shall be commenced, without the application or consent of Borrower in any court of competent jurisdiction, seeking (1) the liquidation, reorganization, dissolution, winding up or composition or readjustment of its debts, (2) the appointment of a trustee, receiver, custodian, liquidator or the like of it or for all or any substantial part of its assets, or (3) similar relief in respect of Borrower, under any law providing for the relief of debtors, and such proceeding or case shall continue undismissed, or unstayed and in effect, for a period of sixty (60) days; or an order for relief shall be entered in an involuntary case under the United States Bankruptcy Code or other similar law or regulation, against Borrower; or action under the laws of any jurisdiction affecting Borrower analogous to any of the foregoing shall be taken with respect to Borrower and shall continue unstayed and in effect for any period of sixty (60) days; or

(v) final judgment for the payment of money shall be rendered by a court of competent jurisdiction against Borrower and Borrower shall not discharge the same or provide for its discharge in accordance with its terms, or procure a stay of execution thereof within sixty (60) days from the date of entry thereof and within said period of sixty (60) days, or such longer period during which execution of such judgment shall have been stayed, appeal therefrom and cause the execution thereof to be stayed during such appeal, and such judgment together with all other such judgments shall exceed in the aggregate US$50,000; or

(vi) any representation or warranty made by Borrower in this Agreement, or any other documents or agreements contemplated hereby and thereby or in any certificate or other instrument delivered hereunder or pursuant hereto or in connection with any provision hereof shall be false or incorrect in any material respect on the date as of which made;

then (x) upon the occurrence of any Event of Default described in Section 7(a)(iii) or (iv), the unpaid principal amount of the loan, together with the interest accrued thereon and all other amounts payable by Borrower under this Agreement, shall automatically become immediately due and payable, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by Borrower or (y) upon the occurrence of any other Event of Default, Holder may, by notice to Borrower, declare the unpaid principal amount of the loan to be, and the same shall forthwith become, due and payable, together with the interest accrued thereon and all other amounts payable by Borrower hereunder.

(b) *Suits for Enforcement.* If any Event of Default shall have occurred and be continuing, Holder may proceed to protect and enforce its rights against Borrower, either by suit in equity or by action at law, or both, whether for the specific performance of any covenant or agreement contained in this Agreement or in aid of the exercise of any power granted in this Agreement, or Holder may proceed to enforce the payment by Borrower of all sums due under this Agreement or to enforce any other legal or equitable right of Holder including without limitation all rights of a secured party under the UCC.

Borrower covenants that, if it shall default in the making of any payment due hereunder or in the performance or observance of any agreement contained in this Agreement, it will pay to Holder such further amounts, to the extent lawful, to cover any reasonable costs and expenses of collection or of otherwise enforcing Holder's rights, including without limitation the reasonable counsel fees and costs and expenses incurred in connection with any restructuring, negotiation, refinancing, workout, bankruptcy or other similar transaction or proceeding. The obligations set forth in this paragraph shall survive the payment in full of the loan.

(c) *Remedies Cumulative.* No remedy herein conferred upon Holder is intended to be exclusive of any other remedy and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise.

(d) *Remedies Not Waived.* No course of dealing between Borrower and any other person and no delay or failure in exercising any rights hereunder or under the loan in respect thereof shall operate as a waiver of Holder's rights.

8. MISCELLANEOUS.

(a) *Reliance on and Survival of Representations.* All representations, warranties, covenants and agreements of Borrower herein shall be deemed to be material and to have been relied upon by Holder and shall survive the execution and delivery of this Agreement and of the Securities, for so long as the loan remains outstanding.

(b) *Successors and Assigns.* This Agreement shall bind and inure to the benefit of and be enforceable by Borrower, Holder and each of their respective successors and assigns, and, in addition, shall inure to the benefit of and be enforceable by each person who shall from time to time be a holder of the loan. Holder shall be permitted to transfer the Securities in accordance with their terms and in accordance with applicable restrictions under applicable federal and state securities laws.

(c) *Notices.* All notices and other communications provided for in this Agreement shall be in writing and delivered by registered or certified mail, postage prepaid, or delivered by overnight courier (for next business day delivery) or telecopied, addressed as follows, or at such other address as any of the parties hereto may hereafter designate by notice to the other parties given in accordance with this Section:

1) if to Borrower:

Peter R. Harvey
20 Bridlewood Road
Northbrook, Illinois 60062
Telephone: (847) 441-6650

With a copy to:

Kwiatt & Ruben Ltd.
211 Waukegan Road, Suite 300
Northfield, Illinois 60093
Attn: Philip E. Ruben
Telephone. (847) 441-7676
Facsimile: (847) 441-7696

2) if to Holder:

Imperial Holdings Group, LLC
200 E. Broward, Suite 920
Ft. Lauderdale, Florida 33301
Attn: Michael S Riley
Telephone: (954) 522-9903
Facsimile: (954) 523-9006

With a copy of any notice to

Nida & Maloney, LLP
800 Anacapa Street
Santa Barbara, California 93101
Attn: Theodore R. Maloney, Esq.
Telephone: (805) 568-1151
Facsimile: (805) 568-1955

Any such notice or communication shall be deemed to have been duly given on the fifth day after being so mailed, the next business day after delivery by overnight courier, when received when sent by telecopy or upon receipt when delivered personally.

(d) *Counterparts.* This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures may be exchanged by telecopy, with original signatures to follow. Each of the parties hereto agrees that it will be bound by its own telecopied signature and that it accepts the telecopied signatures of the other parties to this Agreement. The original signature pages shall be forwarded to Holder or its counsel and Holder or its counsel will provide all of the parties hereto with a copy of the entire Agreement.

(e) *Amendments.* This Agreement may only be amended by a writing duly executed by the parties hereto.

(f) *Severability.* If any term or provision of this Agreement or any other document executed in connection herewith shall be determined to be illegal or unenforceable, all other terms and provisions hereof and thereof shall nevertheless remain effective and shall be enforced to the fullest extent permitted by applicable law.

(g) *Governing Law, Submission to Process.* THIS AGREEMENT AND ALL AMENDMENTS, SUPPLEMENTS, WAIVERS AND CONSENTS RELATING HERETO OR THERETO SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. THE BORROWER HEREBY IRREVOCABLY SUBMITS ITSELF TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS SITTING IN THE STATE OF ILLINOIS AND AGREES AND CONSENTS THAT SERVICE OF PROCESS MAY BE MADE UPON IT IN ANY LEGAL PROCEEDINGS RELATING HERETO BY ANY MEANS ALLOWED UNDER ILLINOIS OR FEDERAL LAW. THE BORROWER IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDING BROUGHT IN SUCH COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. THE BORROWER SHALL APPOINT AN AGENT FOR SERVICE OF PROCESS IN ILLINOIS AND SHALL NOTIFY HOLDER OF ANY FUTURE CHANGE THEREIN.

(h) *Entire Agreement.* This Agreement contains the entire Agreement of the parties hereto with respect to the transactions contemplated hereby and supersedes all previous oral and written, and all previous contemporaneous oral negotiations, commitments and understandings.

(i) *Further Assurances.* Borrower agrees promptly to execute and deliver such documents and to take such other acts as are reasonably necessary to effectuate the purposes of this Agreement.

(j) *Headings.* The headings contained herein are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

(k) *Assignments and Participations.* Borrower may not assign its rights or obligations hereunder or under the loan without the prior written consent of Holder. Holder may assign all or any portion of the loan or Warrant without the prior consent of Borrower. Holder may sell or agree to sell to one or more other persons a participation in all or any part of any of the loan or Warrant without

the prior consent of Borrower Upon surrender of the loan or Warrant, Borrower shall execute and deliver one or more substitute notes, warrants or other securities in such denominations and of a like aggregate unpaid principal amount or other amount issued to Holder and/or to Holder's designated transferee or transferees. Holder may furnish any information in the possession of Holder concerning Borrower, or any of its respective subsidiaries, from time to time to assignees and participants (including prospective assignees and participants).

(l) *Waivers; Indemnity.* Borrower waives presentment and demand for payment, notice of dishonor, protest of this Agreement, and shall pay all costs of collection when incurred, including reasonable attorneys' fees, costs and expenses. Borrower shall indemnify and hold harmless from any claim, obligation or liability (including without limitation reasonable attorneys fees and expenses) arising out of this Agreement.

(m) *Jury Waiver.* HOLDER AND BORROWER EACH WAIVES ANY RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREIN.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year set forth above.

BORROWER:

Peter R. Harvey

HOLDER:

IMPERIAL HOLDINGS GROUP, LLC

By: ______________________________
Name:
Its

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year set forth above.

BORROWER:

______________________________
Peter R. Harvey

HOLDER:

IMPERIAL GROUP HOLDINGS, INC.

By: ______________________________
Name:
Its: Principal

**Schedule 3**

**Indebtedness**

EXHIBIT B

Peter R. Harvey
20 Bridlewood Road
Northbrook, Illinois 60062

March 28, 2001

**Via Facsimile #: (954) 523-9006**
**and Federal Express**

Imperial Holdings Group, LLC
200 E. Broward, Suite 920
Ft. Lauderdale, Florida 33301
Attn: Michael S. Riley

Re: Loan Agreement dated December 29, 2000, Loan Agreement dated February 8, 2001 and Loan Agreement dated March 28, 2001, by and between Imperial Holdings Group, LLC and Peter R. Harvey (the "Loan Agreements")

Dear Mike:

This letter agreement (the "Letter Agreement") will reflect our mutual agreement with regard to fees owed by me pursuant to the Loan Agreements.

The aggregate amount of fees owed by me to Imperial Holdings Group, LLC is $150,000, earned as follows:

| Agreement | Fees |
|---|---|
| Loan Agreement dated December 29, 2000 | $30,000 |
| Loan Agreement dated February 8, 2001 | $30,000 |
| Loan Agreement dated March 28, 2001 | $90,000 |

Please indicate your agreement to the foregoing by signing in the space set forth below.

Very truly yours,

By:____________________
Peter R. Harvey

Agreed as to the foregoing.

Imperial Holdings Group, LLC

Date:________________, 2001

____________________
By:
Its.

04/11/01 WED 13:55 [TX

EXHIBIT B






UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS



# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

DOCKETED
JAN 17 2002

| | |
|---|---|
| **Plaintiff(s): IMPERIAL HOLDINGS GROUP, LLC., a Nevada limited liability company** | **Defendant(s):PETER R. HARVEY** |
| County of Residence: Broward County, Florida | County of Residence: |
| Plaintiff's Atty: Martin B. Carroll - Richard L. Sandler<br>Fox, Hefter, Swibel, Levin & Carroll<br>325 N. LaSalle St., Suite 625,<br>Chicago, IL 60610<br>312-224-1200 | Defendant's Atty: |

JUDGE HIBBLER

02C 0382

MAGISTRATE JUDGE ASHMAN

II. Basis of Jurisdiction: **4. Diversity (complete item III)**

III. Citizenship of Principle Parties **(Diversity Cases Only)**

Plaintiff:- **1 Citizen of This State**

Defendant:- **5 Non IL corp and Principal place of Business outside IL**

IV. Origin : **1. Original Proceeding**

V. Nature of Suit: **140 Negotiable Instrument**

VI.Cause of Action: **Breach of contract - Diversity jurisdiction 28 USC 1332(a)(1)**

VII. Requested in Complaint

Class Action: **No**

Dollar Demand: **$3,130.999.97**

Jury Demand: **No**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

**Signature:** [signature]

**Date:** 1/16/02

1-2

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

IMPERIAL HOLDINGS GROUP, LLC,
a Nevada limited liability company,
v.
PETER R. HARVEY

Case Number: 02C 0382

DOCKETED JAN 17 2002

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

IMPERIAL HOLDINGS GROUP, LLC.

JUDGE HIBBLER

MAGISTRATE JUDGE ASHMAN

| (A) | (B) |
|---|---|
| SIGNATURE [signature] | SIGNATURE [signature] |
| NAME Martin B. Carroll | NAME Richard L. Sandler |
| FIRM Fox, Hefter, Swibel, Levin & Carroll | FIRM Fox, Hefter, Swibel, Levin & Carroll |
| STREET ADDRESS 325 North LaSalle Street, Suite 625 | STREET ADDRESS 325 North LaSalle Street, Suite 625 |
| CITY/STATE/ZIP Chicago, Illinois 60610 | CITY/STATE/ZIP Chicago, Illinois 60610 |
| TELEPHONE NUMBER (312) 224-1200 / FAX NUMBER (312) 224-1202 | TELEPHONE NUMBER (312) 224-1200 / FAX NUMBER (312) 224-1202 |
| E-MAIL ADDRESS mcarroll@fhslc.com | E-MAIL ADDRESS rsandler@fhslc.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6200977 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6188636 |
| MEMBER OF TRIAL BAR? YES ☑ NO ☐ | MEMBER OF TRIAL BAR? YES ☑ NO ☐ |
| TRIAL ATTORNEY? YES ☑ NO ☐ | TRIAL ATTORNEY? YES ☑ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☑ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☑ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

13